UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLA ELISA CORTEZ, | No. 2:25-cv-02321-DJC-JDP |
| Plaintiff, | |
| v. | ORDER |
| POST CONSUMER BRANDS, LLC, | |
| Defendant. | |

Plaintiff Karla Elisa Cortez purchased Nature's Recipe dog food advertised as having no artificial preservatives, among other attributes. She now contends the dog food contained manufactured citric acid, an artificial preservative ingredient used in food and beverage products. Plaintiff brings a putative consumer protection class action on behalf of herself, others similarly situated, and the general public against Defendant Post Consumer Brands, LLC, alleging violations of California's Consumers Legal Remedies Act, Unfair Competition Law, and breach of express warranty.[1]

---

[1] On October 29, 2025, the parties jointly stipulated to the substitution of Post Consumer Brands, LLC, as the proper defendant in this action. (ECF No. 14.) Thereafter, Post Holdings, Inc. was terminated from the matter. (ECF No. 15.)

1

(Compl. (ECF No. 1).)  Defendant moves to dismiss.  (MTD (ECF No. 7).)  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

The factual allegations in the Complaint are presumed to be true for purposes of the motion to dismiss.  *See Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).  Defendant manufactures, distributes, advertises, markets, and sells Nature's Recipe brand dog food products.  (Compl. ¶ 3.)  The challenged products include all Nature's Recipe brand dog food products labeled as containing "No Artificial . . . Preservatives" that include citric acid as an ingredient.  (*Id.* at n.1.)  The front of the packaging prominently displays the claim that the products contain "No Poultry Byproducts or Artificial Colors, Preservatives, or Flavors."  (*Id.* ¶ 3.)  This advertising misleads "reasonable consumers into believing that the Products are free from artificial preservative ingredients . . . [h]owever, each of the Products contain an artificial preservative called manufactured citric acid."  (*Id.* ¶ 12.)  Defendant does not use natural citric acid extracted from fruit in the Products.  (*Id.* ¶ 13.)

Plaintiff purchased the Nature's Recipe Grain Free Salmon, Sweet Potato & Pumpkin Recipe Product from Target and PetCo stores located in Sacramento County.  (*Id.* ¶ 35.)  She relied on Defendant's "No Artificial . . . Preservatives" labeling statement when purchasing the dog food.  (*Id.* ¶ 33.)  She would not have purchased the Product, or would have paid less for the Product, had she known it contained an artificial preservative ingredient.  (*Id.* ¶ 35.)  Plaintiff desires to purchase the Product again if the labels were accurate and if the products do not contain artificial preservatives.  (*Id.*)  She is unable to rely on the Products' labeling when deciding in the future whether to purchase the Product.  (*Id.*)

On August 14, 2025, Plaintiff filed this putative class action on behalf of California consumers alleging violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code ¶ 1750 *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and breach of express warranty.  (*See*

*generally* Compl.)  On October 27, 2025, Defendant filed a Motion to Dismiss (*see generally* MTD), and briefing is now complete (Opp'n (ECF No. 18); Reply (ECF No. 19)).  The Court held oral argument on December 18, 2025, and took the matter under submission.  (ECF No. 23.)  Plaintiff filed a notice of supplemental authority on February 12, 2026.  (ECF No. 25.)

## LEGAL STANDARDS

A party may move to dismiss a complaint for "lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1).  "The party asserting federal subject matter jurisdiction bears the burden of proving its existence."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  In a "facial attack" under Rule 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Meyer*, 373 F.3d at 1039.  In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment, and the court need not presume the truthfulness of the plaintiff's allegations.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  Plausibility

requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Conclusory allegations are not to be considered in the plausibility analysis. *Id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

## DISCUSSION

Defendant seeks dismissal of Plaintiff's Complaint for several reasons: first, that Plaintiff's definition of "artificial" is implausible; second, that Plaintiff fails to address and allege that alternative productions methods also result in artificial ingredients; third, that the CLRA and UCL claims must be dismissed to the extent they rely on certain omission theories; fourth, that Plaintiff lacks Article III and statutory standing; and fifth, that Plaintiff's claims for punitive damages and equitable relief lack certain plausible allegations and must be dismissed. The Court will first address standing and pleading standards before reaching the balance of Defendant's arguments.[2]

### I. Standing

The Court will first address Defendant's challenges regarding Plaintiff's Article III and statutory standing, including standing for injunctive relief.

Article III standing requires a showing of an injury in fact that is traceable to the challenged conduct and redressable by a favorable ruling. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). In addition to Article III standing, Plaintiff must establish standing to bring the UCL and CLRA claims. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). These statutes require a showing of

---

[2] Plaintiff refers to several academic and scientific articles throughout her Complaint, FDA letters, USDA documents, and various images of chemical processes, and seeks judicial notice for them. (*See generally* Compl.) Defendant similarly requests the Court take judicial notice of the Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates article, which is also referenced in Plaintiff's Complaint. Because the Court resolves the Motion to Dismiss without relying on these extraneous materials, the parties' requests for judicial notice are denied.

4

"economic injury."  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011).  The economic injury requirement under the UCL is "substantially narrower than federal standing . . . which may be predicated on broader range of injuries."  *Id.* at 324.  The standing requirements under the UCL are also more stringent than those imposed by the CLRA, which requires only that Plaintiff have suffered "any damage" on account of the defendant's misconduct.  Cal. Civ. Code § 1780(a); *see also Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1108 (9th Cir. 2013) ("[A]ny plaintiff who has standing under the UCL's . . . 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." (emphasis in original)); *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 641–43 (2009) (discussing standing requirements under CLRA).  Therefore, if Plaintiff has sufficiently alleged standing under the UCL, she has also alleged standing under the CLRA and Article III.  As discussed below, Plaintiff adequately establishes both Article III and statutory standing.

**A.  Whether Plaintiff may assert claims for products she did not purchase**

Defendant contends that Plaintiff does not have standing for Nature's Recipe dog food products labeled as having "No Artificial . . . Preservatives" that she did not herself purchase.  (MTD at 17.)  Plaintiff asserts she has statutory standing as well as Article III standing under a "substantial similarity" theory, and, alternatively, requests the Court defer resolution of the standing question to the class certification stage.  (Opp'n at 25.)

In the Ninth Circuit, "[t]here is no controlling authority on whether Plaintiffs have standing for products they did not purchase."  *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012) (citing *Donahue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921–22 (N.D. Cal. 2012) (collecting cases)).  However, in the Eastern District, the majority of courts have applied the "substantial similarity" test.  *See Takano v. Procter & Gamble Co.*, No. 2:17-cv-00385-TLN-AC, 2018 WL 5304817, at *4 (E.D. Cal. Oct. 24, 2018) (surveying cases in the Ninth Circuit and Eastern District); *Golden v.*

*Home Depot, U.S.A, Inc.*, No. 1:18-cv-00033-LJO-JLT, 2018 WL 2441580, at *15 (E.D. Cal. May 31, 2018) (same).  This Court will apply the substantial similarity test.

The Court finds that Plaintiff has alleged sufficient similarity between the Product she purchased and the Products she did not purchase.  Plaintiff alleges the following: "Defendant manufactures, distributes, advertises, markets, and sells Nature's Recipe brand dog food products.  The packaging prominently displays on the front of the label the claim that these Products contain "No Poultry Byproducts or Artificial Colors, Preservatives, or Flavors." (Compl. ¶ 3.)  In a footnote, Plaintiff defines "Products" as "all Nature's Recipe brand dog food products labeled as containing "No Artificial . . . Preservatives" that include citric acid as an ingredient.  (*Id.* ¶ 3 n.1.)  While Defendant points out that Plaintiff does not provide any other label exemplars for the unpurchased products, "[i]f the misleading aspects of both the purchased and unpurchased products can be examined without a 'context-specific analysis of each product's label,' the products are substantially similar."  *Takano*, 2018 WL 5304817, at *4 (quoting *Ang v. Bimbo Bakeries USA, Inc.* No. 13-cv-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014)).

A context-specific analysis is not necessary at this stage because the asserted claims share a common labeling practice.  That is, the common issue is whether Nature's Recipe dog food products containing allegedly artificial citric acid are misleading when they are advertised and sold as containing "No Artificial . . . Preservatives."  Here, the language and nature of the misrepresentation and the type of harm suffered is the same as to all the Nature's Recipe products in the class containing the challenged statement.  *See Takano*, 2018 WL 5304817, at *5 (identifying a common mislabeling practice sufficient to warrant standing under substantial similarity test for putative class action).  The Court concludes that Plaintiff has Article III standing as to the unpurchased products.

As to statutory standing, the Court concludes that Plaintiff has adequately alleged standing under the UCL.  First, she alleges economic injury, which constitutes

injury in fact.  *Kwikset*, 51 Cal. 4th at 323.  She writes, "Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations . . . [t]his reliance has caused harm to Plaintiff and the other members of the Class, *each of whom purchased Defendant's Products*.  Plaintiff and the other Class Members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices." (Compl. ¶¶ 34, 71) (italics added).  Causation is also met where Plaintiff demonstrates actual reliance on the allegedly deceptive or misleading statements.  Plaintiff has alleged that she "saw and relied on the 'No Artificial . . . Preservatives" claim on the label of the Product.  (*Id.* ¶ 35.)  She further explains that "[c]onsumers, like Plaintiff, relied on Defendant's . . . labeling statement when purchasing food for their dogs" and that such a statement is "material to reasonable consumers."  (*Id.* ¶ 33.) Importantly, she contends that "[c]onsumers, including Plaintiff, would not have purchased Defendant's products, or would have paid less for the Products, if they had known the Products actually contain an artificial preservative ingredient."  (*Id.* ¶ 34.) The assertion that "Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent" is "sufficient to allege causation" under *Kwikset*'s reasoning.  51 Cal. 4th at 330.

        In summary, the Court concludes that Plaintiff has adequately alleged both Article III and statutory standing under the UCL on behalf of herself and the putative class members.  Because she alleges statutory standing under the UCL, Plaintiff has also adequately alleged standing under the CLRA.  *Hinojos*, 718 F.3d at 1108.

**B.  Standing for Injunctive Relief**

        Defendant additionally contends that Plaintiff does not have standing to seek injunctive relief because Plaintiff's theory demonstrates that she can "easily determine" the truth of Defendant's representations.  (MTD at 19; Reply at 15.)  That is, because she essentially alleges that all commercial food manufacturers, including Defendant, use a synthetic form of citric acid that is artificial (*see* Compl. ¶ 13), she "would know

that she could check any representations made on [Defendant's] products by referring to the ingredients list; if citric acid is listed, it is artificial under her theory," (MTD at 19). Under Defendant's reasoning, Plaintiff's own theory thus forecloses her request for injunctive relief.  As support for this position, Defendant cites to *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229 (C.D. Cal. 2025) and *Squeo v. Campbell Soup Company*, No. 5:24-cv-02235-SVK, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024). Plaintiff contends she has standing to seek injunctive relief, citing to Ninth Circuit authorities and this Court's reasoning in *Timmins v. Unilever U.S., Inc.*, 785 F. Supp. 3d 774 (E.D. Cal. 2025).  The Court agrees with Plaintiff.

In the deceptive-advertising context, the Ninth Circuit has explained what is required for a Plaintiff to have standing for injunctive relief:

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 968 (9th Cir. 2018).  Importantly, in *Davidson*, the Court was "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label in false." *Id.* at 970 (emphasis added and citation omitted).  Because the plaintiff in *Davidson* alleged that she desired to purchase flushable wipes and would purchase truly flushable wipes manufactured by the defendant but had no way of determining whether the flushable representation was in fact true, the Court concluded that the plaintiff adequately

alleged that she faced a threat of future harm due to defendant's false advertising. *Id.* at 970–71.

Relying on *Squeo* and other authority, Defendant contends that once Plaintiff is "[a]rmed with the ability to easily determine whether the [dog food] contain[s] citric acid, there is simply no threat that Plaintiff[ ] will be deceived in the same way again." *Squeo v. Campbell Soup Co.*, 2024 WL 4557680, at *8 (collecting cases); *see also Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1080 (N.D. Cal. 2022) (concluding injunctive relief "would serve no meaningful purpose" because plaintiff could "evaluate product claims and make appropriate purchasing decisions" (citation omitted)).

However, in *Davidson*, the Court did not find the plaintiff's prior knowledge of the label's falsity to be dispositive on the issue of whether she had standing for injunctive relief. 889 F.3d at 970. So too here. At the motion to dismiss stage, the Court presumes the truth of Plaintiff's allegations and construe all of them in her favor. Like the plaintiff in *Davidson*, Plaintiff alleges here that "she desires to purchase the Product again if the labels of the products were accurate and if the products actually contained 'No Artificial . . . Preservatives.' However, as a result of Defendant's ongoing representations, [she] is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products." (Compl. ¶ 35.) These allegations are sufficient.

Accordingly, because Plaintiff has standing to seek injunctive relief, Defendant's motion to dismiss this claim is DENIED.

**II.  Rule 9(b)**

The essence of Plaintiff's claims is that Defendant's label misled her and other purchasers into believing the product did not contain artificial preservatives when in fact it did. Because these claims sound in fraud, Plaintiff's Complaint must satisfy not only Rule 12(b)(6)'s plausibility pleading standard but also the heightened pleading requirements of Rule 9(b). *See Davidson*, 889 F.3d at 964. Rule 9(b) requires that a

party plead fraud with particularity.  This means the complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Id.* (citation omitted).

Plaintiff sufficiently alleges the "who, what, when, where, and how" of the misconduct charged.  The "who" is Defendant.  (Compl. ¶ 13.)  The "what" is that the label's representation states that there are "No Artificial . . . Preservatives" in the product.  (*Id.* ¶ 33.)  The "when" and "where" are Plaintiff's purchase of the product in Sacramento County "during the class period."  (*Id.* ¶ 35.)  The "how" is that Plaintiff "saw and relied on the 'No Artificial . . . Preservatives' claim on the labels of the product" but the product in fact contains "artificial manufactured citric acid."  (*Id.* ¶¶ 13, 33, 35.)

Defendant contends that for fraud-based claims, Plaintiff must explain what the "at issue phrases" meant and allege why the statements were false or misleading at the time they were made.  (Mot. at 11.)  The Ninth Circuit has said as much in *In re Cloudera, Inc.*: "Most importantly, the complaint must explain what is false or misleading about the purportedly fraudulent statement, and why it is false. . . .it must explain why the statements were false or misleading at the time they were made."  121 F.4th 1180, 1187 (9th Cir. 2024) (internal quotation marks and citations omitted).

Defendant takes particular aim at Plaintiff's definition that something "artificial" is "made by man," (Compl. ¶ 25), and critiques her "shifting terminology," (Mot. at 11). However, to satisfy Rule 9(b), Plaintiff's allegations of fraud need only be specific enough to give "notice of the particular misconduct which is alleged to constitute the fraud charged."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  The Court is mindful that dismissal is appropriate when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived."  *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024). Plaintiff satisfies this standard.  She has alleged that she believed the dog food

product she purchased was "free from artificial preservative ingredients" which was based on the front label's representation that there were "No Artificial . . . Preservatives." (*See* Compl. ¶ 12.)  She has also alleged that the product contained "an artificial preservative called manufactured citric acid," and she incorporates with her complaint a photograph of the exact product she purchased along with the ingredients list.  This is specific and plausible enough to give Defendant notice of the misconduct alleged and thus satisfies Rule 9(b).  (*See* Compl. ¶ 12.); *see Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020) (finding attached images and ingredients lists for challenged products sufficiently particular under Rule 9(b) to put defendant on notice of misconduct alleged); *see also Timmins*, 785 F. Supp. 3d at 781 ("Even if Defendant or the Court could construct a competing plausible definition, it would be improper at this stage for the Court to 'select between competing plausible interpretations of an ambiguous term.'") (citation omitted).

**III. The UCL and CLRA Claims**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . intended to result or that results in the sale or lease of goods or services to any consumer[.]"  Cal. Civ. Code § 1770. "[C]laims under the UCL . . . and CLRA are governed by the 'reasonable consumer' standard," which requires a plaintiff to "show that members of the public are likely to be deceived."  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (internal citations omitted).  Courts begin this analysis by focusing on the front label, and they may consider the back label of a product only if the front label creates ambiguity such that "reasonable consumers would necessarily require more information before they could reasonably conclude the front label was making a specific representation."  *Whiteside*, 108 F.4th at 780 (cleaned up and citations omitted).  "California courts . . . have recognized that whether a business practice is

deceptive will usually be a question of fact not appropriate for" a motion to dismiss. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

### A. Plaintiff's Definition of "Artificial"

Defendant contends that Plaintiff asks the Court to accept an "impossible definition" as she defines "artificial" as "something made by man," which would encompass nearly any ingredient including those commonly understood as natural, such as flour.  (MTD at 12.)  While this is not Plaintiff's only definition, the observation is well taken but ultimately beside the point at this stage.  Defendant relies on *Pelayo v. Nestle USA, Inc.* for the general principle that conflicting implausible definitions cannot state claims under the CLRA and UCL, but *Pelayo* involved a situation in which plaintiff's definition of "All Natural" was both objectively <u>and</u> subjectively implausible. 989 F. Supp. 973 (C.D. Cal. 2013).  Not only did plaintiff provide several unreasonable definitions in *Pelayo* but, critically, defendant's "use of the term 'All Natural' [wa]s not deceptive in context."  *Id.* at 980.  A reasonable consumer would not be deceived, the *Pelayo* court reasoned, because "the ingredient list [wa]s entirely consistent with the use of the term 'All Natural'" in that it plainly disclosed the presence of synthetic ingredients such as xanthan gum and soy lecithin.  *Id.*  Therefore, the court concluded that plaintiff had not alleged either a plausible objective definition of the term "All Natural" or a subjective definition shared by a reasonable consumer.

Unlike in *Pelayo*, the ingredients list that Plaintiff provides in this case does not affirmatively disclose the presence of a synthetic form of citric acid – rather, the label states only "Citric Acid (used As A Preservative)."  (Compl. ¶ 12.)  This non-specific use of the phrase "citric acid" would arguably not put a reasonable consumer on notice that the ingredient was artificial, given the front label's unambiguous advertisement and the fact that citric acid is found naturally occurring in fruit.  Thus, *Pelayo* does not meaningfully assist Defendant in establishing that "No Artificial . . . Preservatives" is not deceptive in context.

In any event, the Ninth Circuit has since given guidance about when to look at back labels and that is only when the front label is ambiguous. *Whiteside*, 108 F.4th at 780. But when, as here, Plaintiff "has plausibly alleged that a reasonable consumer could interpret the front label as unambiguously representing that the Products do not contain synthetic ingredients . . . a reasonable consumer would not necessarily require more information from the back label before so concluding." *Id.* at 782. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently alleged reasonable consumers would view the no artificial preservatives statement of the front label to be unambiguous. *See Taylor v Walmart, Inc.*, 789 F. Supp.3d 774, 786 (denying motion to dismiss in similar circumstances); *Squeo v. Campbell Soup Co.*, 2024 WL 4557680, at *4 ("Plaintiffs' well-supported allegations render it highly likely the citric acid included in the [product] was artificially produced"). Plaintiff has alleged that she saw and relied on the "no artificial preservatives" language on the label and that she would not have purchased the product, or would have paid less for the product, had she known it actually contained an artificial preservative ingredient. (Compl. ¶ 35.) She has alleged that other consumers relied on the same advertisement and that "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health." (*Id.* ¶ 33.) As support for her allegations that the citric acid is artificially manufactured, Plaintiff cites to numerous scientific articles, FDA regulations, letters from the FDA, USDA documents, and images of chemical processes used to create citric acid. (*Id.* ¶¶ 13–34.) This is a sufficient factual basis for Plaintiff's allegations.

### B. Alternative Production Methods

Accordingly, given that Plaintiff has provided an adequate factual basis for her deception claims under the CLRA and UCL, the Court need not reach Defendant's remaining arguments that Plaintiff fails to address obvious alternative explanations for the type of citric acid used in the products Defendant sells. (MTD at 13–16.) As discussed, Plaintiff's factually supported allegations that "Defendant does not use

natural citric acid extracted from fruit in the Products" and that "[a]pproximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919," (Compl. ¶ 13), plausibly state claims that the citric acid used in Defendant's products is artificial.  This is sufficient to "raise a right to relief above the speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Accordingly, the Court DENIES the Motion to Dismiss the CLRA and UCL claims.

**IV. Plaintiff's Omission Theories**

The parties dispute whether dismissal of Plaintiff's omission theories is appropriate.  Defendant contends that Plaintiff's allegations of omission in her Complaint are conclusory and warrant dismissal because a partial omission theory first requires a true representation whereas Plaintiff has alleged that Defendant's labeling was false.  (Compl. ¶ 4; MTD at 16–17.)  Defendant also challenges any pure omission theory.  (MTD at 17.)

"A partial representation (or 'partial omission') claim is . . . well-settled under California law.  The duty to disclose the allegedly omitted information arises from the fact that the omission is 'contrary to a representation actually made by the defendant.'"  *Anderson v. Apple, Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020).  Importantly, Plaintiff "cannot allege a partial omission triggering a duty to disclose where [she] only claim[s] that Defendant's marketing materials are outright false."  *Hamman v. Cava Grp., Inc.*, No. 3:22-cv-00593-MMA-MSB, 2023 WL 3450654, at *9 (S.D. Cal. Feb. 8, 2023).  The Court agrees with Defendant that the gravamen of Plaintiff's claims is that Defendant's statement of "No Artificial . . . Preservatives" is false because the products contain artificial citric acid.  This case is different than the challenged statements in *Anderson* where the court found that "what is disclosed is in some sense true but that the whole truth is missing."  500 F. Supp. 3d at 1013.  Here,

14

Plaintiff has not argued that the statement "no artificial preservatives" is true in any sense, thus, she may not proceed under a partial omission theory.

Turning to the pure omission theory, a duty to disclose may arise "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Hamman*, 2023 WL 3450654, at *9 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).  There are no allegations under the first two prongs in the Complaint.  To the extent Plaintiff's allegations can be construed as active concealment under the third prong, she does not allege "specific facts that Defendant actively tried to conceal the presence of [artificial citric acid] in the Products."  *Hamman*, at *10.  Thus, Plaintiff cannot assert a pure omission theory.

Accordingly, the Court GRANTS the Motion to Dismiss Plaintiff's claims to the extent they are premised on any omission theory.  Because any amendment would be futile, they are dismissed without leave to amend.

**V.  Equitable Remedies**

Defendant opposes Plaintiff's requests for equitable relief.  (MTD at 20.)  To seek equitable remedies at the pleading stage, a plaintiff need only allege that they might lack an adequate remedy at law.  *Timmins*, 785 F. Supp. 3d at 784; *see Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 906–07 (N.D. Cal. 2024) (collecting cases).  Plaintiff has alleged that due to the premature status of the case, no adequate remedy at law exists and she seeks to reserve her right to equitable relief.  (*See* Compl. ¶¶ 36–39.)  Her allegations describe the reasons why equitable relief is appropriate.  (*Id.*)  Defendant's reliance on *Key v. Qualcomm, Inc.* is inapt as that case presented with a different procedural posture.  129 F.4th 1129, 1142 (9th Cir. 2025). In *Key*, in reviewing the district court's order on summary judgment, the Ninth Circuit held that plaintiff did not allege that they lacked an adequate legal remedy in the

complaint and that Plaintiff's failure to prove her legal claims at the summary judgment stage did not mean those remedies were inadequate. *Id.* at 1142. Thus, the court held that instead of granting summary judgment, the district court should have dismissed the UCL claim. Unlike in *Key*, here Plaintiff has alleged that she does not have an adequate remedy at law and this case is not at summary judgment.

Thus, the Court DENIES Defendant's request to dismiss Plaintiff's prayer for equitable remedies.

## VI. Punitive Damages

Punitive damages are generally not available under the UCL or the False Advertising Law, the latter of which is not at issue here. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007); *see also Petkevicius v. NBTY, Inc.*, No. 3:14-cv-02616-CAB-(RBB), 2017 WL 1113295, at *10 (S.D. Cal. Mar. 24, 2017). Moreover, punitive damages are not available under California law for breach of express or implied warranty. *See Goel v. Coal. Am. Holding Co. Inc.*, No. 2:11-cv-2349 GAF (Ex), 2011 WL 13128300, at *9 (C.D. Cal. July 5, 2011) (citing *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1224 (2009)). Accordingly, Plaintiff's only potential punitive damages come under her CLRA claim.

Defendant correctly argues that Plaintiff has failed to identify any officer, director, or managing agent of the corporation who committed an act of oppression, fraud, or malice in the allegations of her Complaint and thus she cannot seek punitive damages in connection with her CLRA claim. "[A] corporate entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1148 (N.D. Cal. 2018); *see also Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 5:14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("[A] company simply cannot commit willful and malicious conduct – only an individual can.") Accordingly, the

Court GRANTS the Motion to Dismiss the request for punitive damages, but with leave to amend.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 7) is GRANTED in part and DENIED in part:

1. Defendant's Motion to Dismiss Plaintiff's omission theories is GRANTED. Omission theories under Claims 1 and 2 are dismissed without leave to amend;

2. Defendant's Motion to Dismiss Plaintiff's request for punitive damages is GRANTED with leave to amend; and

3. Defendant's Motion is otherwise DENIED.

IT IS SO ORDERED.

Dated:   **March 9, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8–Cortez.25cv02321.MTD

17